**J. Ashlee Albies,** OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**David J. Linthorst,** OSB No. 116975
Email: david@andersenlaw.com
Andersen Morse & Linthorst
130 E. McAndrews, Suite A
Medford, Oregon 97504
Telephone: (541) 773-7000

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **EAMONN KERR-DALY**, an individual, by and through his GUARDIAN AD LITEM, SARAH KERR-DALY,<br><br>    Plaintiff,<br><br>v.<br><br>**CITY OF EUGENE**, a municipal corporation, **CRAIG WRIGHT** in his individual capacity, **DAVID POTTER** in his individual capacity, **JOSE ALVAREZ** in his individual capacity, **JOHN JENSEN** in his individual capacity, **CHUCK SALSBURY** in his individual capacity, **MARGARET MUETH** in her individual capacity, **ANDREW ROBERTS** in his individual capacity, and **BRANDON RATHJE** in his individual capacity;<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Violations of Civil Rights: 42 U.S.C § 1983; 42 U.S.C. §§ 12131-12165 (Americans with Disabilities Act); Battery (state tort); Assault (state tort); Abuse of Vulnerable Person Under ORS 124.100(2); Negligence (state tort)<br><br>**DEMAND FOR JURY TRIAL** |

PAGE - 1   COMPLAINT

## INTRODUCTION

1.

On August 6, 2020, Eugene Police unnecessarily attacked and arrested Plaintiff Eamonn Kerr-Daly while he was in the midst of a mental health crisis. His mother called non-emergency services to specifically request assistance from CAHOOTS. Both CAHOOTS and Eugene Police Officers responded. The police officers quickly excluded CAHOOTS from the response, even though they knew from prior experience that Eamonn would be responsive to CAHOOTS, was calm, unarmed, compliant, and had a prior traumatic experience with the police. Moreover, police knew he was a person with a disability, experiencing a mental health crisis. Despite this, officers violently arrested him, punching him in the head at least five times, Tasering him, and then hog-tying him for over half an hour until taking him to jail – over the protestations of his medical doctor, parents, and counselor who were all on scene along with CAHOOTS professionals. Jail was not only unnecessary, it was the worst place for him in the middle of an on-going COVID pandemic and delayed his medical treatment for his mental health condition. As a result of Defendants' unlawful conduct, Eamonn suffered severe pain, and lasting physical and emotional harms.

## PARTIES

2.

Plaintiff Eamonn Kerr-Daly (hereinafter "Eamonn" or "Plaintiff"), at the time of filing and at all material times, was a resident of Eugene in Lane County, Oregon. He has been diagnosed with Schizoid-Affective disorder, which renders him unable to care for himself. His mother is Sarah Kerr-Daly ("Sarah") and his father is Paul Daly ("Paul"), and they provide Eamonn with care and shelter. Sarah has petitioned to be appointed Eamonn's Guardian Ad Litem for this case.

///

PAGE - 2   COMPLAINT



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

3.

Defendant City of Eugene ("City" or "Defendant") is and at all material times hereto has been a municipal corporation in the State of Oregon. The Eugene Police Department ("EPD"), a department of the City, is the law enforcement agency of the City. As a local governmental entity, the City of Eugene is a "person" under 42 U.S.C. § 1983. At all material times, the City of Eugene employed the defendant officers. At all material times, the defendant officers were acting pursuant to the City of Eugene's laws, customs, and/or policies. Per ORS 30.285(1), the city must indemnify its officers for their tortious acts and is therefore liable for the purposes of this action by Plaintiff.

4.

Defendant officers, Craig Wright, David Potter, Jose Alvarez, John Jensen, Chuck Salsbury, Margaret Mueth, Andrew Roberts, and Brandon Rathje (hereinafter "Individual Defendants") are or at all material times hereto were EPD officers, employees, and agents of the EPD acting under color of law and are sued in their individual capacities.

## TORT CLAIM NOTICE

5.

Prior to the institution of this action, Plaintiff provided timely notice of his claim to all necessary parties pursuant to ORS 30.275.

## FACTUAL ALLEGATIONS

6.

Eamonn Kerr-Daly is a 31-year-old resident of Eugene, Oregon. He has a mental health diagnosis which interferes with major life functions.

7.

On August 6, 2020, Eamonn was living with his mother Sarah in her home when he suffered a mental health crisis. Sarah called non-emergency services and requested CAHOOTS, White

PAGE - 3   COMPLAINT



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Bird Clinic's non-law enforcement crisis intervention service. Sarah repeatedly asked for no police and requested CAHOOTS because CAHOOTS was familiar with Eamonn (Eamonn had previous positive interactions and responses to CAHOOTS), and because Eamonn had had previous negative and traumatizing interactions with the police.

8.

Shortly after, both CAHOOTS and Eugene Police Officers (individual Defendants) arrived at the home. Sarah and Paul explained to the officers what had happened earlier: Eamonn was on the living room couch nude, but then quickly got dressed. After Sarah walked out of the house, Eamonn walked to the kitchen, picked up a kitchen knife, pointed it at Paul, and told him to leave the house. Paul left the house. Eamonn put the knife back down. Paul and Sarah made it clear to the officers—including Defendant Wright—that Eamonn's conduct was a result of his mental health crisis, that they did not feel scared or threatened but were concerned about Eamonn's well-being, that Eamonn had since gotten dressed and now seemed calmer, and that Eamonn no longer had a knife. Defendants knew this information before engaging with Eamonn that day.

9.

Prior to Defendants engaging with Eamonn that day, Sarah asked Defendant Wright whether she could go in and talk to Eamonn. Defendant Wright denied her request. Sarah stated that she had wanted CAHOOTS to respond, not police officers. She also explained to Defendants—including Defendant Wright—that Eamonn had "PTSD" from a prior interaction with the police. Sarah again raised this concern with Defendant Alvarez, noting a recent event where a mentally ill man was killed in Springfield, and telling Defendant Alvarez that she needed CAHOOTS because Eamonn previously had a very bad experience with the police and that he was "traumatized" by it. The officers assured Sarah and Paul that the plan was to just to talk to Eamonn, to get him to come out and sit on the curb, and to get him "settled down."

PAGE - 4   COMPLAINT



1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

10.

Defendant Wright had or assumed responsibility for coordinating and directing the officers' plan with regard to Eamonn. He directed CAHOOTS to go down the street, away from the home where they could have been of assistance, and then told Sarah and Paul to go to CAHOOTS and "fill them in." Once out of earshot of Sarah and Paul, Defendant Wright commented that he had CAHOOTS there to "manage the parents" and that "neither of them know it yet." The officers then engaged in a sarcastic exchange, mocking, laughing, and disparaging CAHOOTS.

11.

Multiple officers and Defendants then surround the house, including in the front yard, garage, driveway, side yard, and adjacent neighbors' yards. Defendant Alvarez yelled from the yard to Eamonn in the house, including commands to come out and talk with the officers, to come out with his hands open and empty, and that the police would not go away until Eamonn talked with them.

12.

Less than eight minutes after Defendant Alvarez first started yelling at Eamonn to come out of the house, Eamonn came out of the house, no longer nude but wearing sweatpants and a sweatshirt. Defendant Alvarez asked Eamonn if he had any weapons and Eamonn said no. Defendant Alvarez then told Eamonn he was under arrest and not free to leave. When asked if Eamonn understood, Eamonn replied, "No, I don't think so." Defendant Alvarez then told Eamonn that he "threatened [his] parents with a knife earlier." In response, Eamonn went back inside the house. The entire exchange lasted approximately two minutes. At that point, Eamonn posed no threat to anyone.

13.

About six minutes later, officers started yelling at Eamonn again, telling him to come to the front door and that CAHOOTS also wanted to speak with him. About nine minutes later, the officers

PAGE - 5   COMPLAINT



approached the front door of the house and threw in Paul's cell phone on speaker phone, telling Eamonn he could talk to them through it. Seconds later, however, officers saw Eamonn was lying on the couch and entered the house.

14.

Defendant Salsbury was one of the first officers to enter the living room and talk to Eamonn. Eamonn was lying face-up on the couch under a blanket, with his arms over the blanket. Defendant Salsbury asked to see Eamonn's hands to check for weapons, and Eamonn held up his hands. Defendant Salsbury thanked him for doing that. Defendant Salsbury then asked Eamonn to take off his blanket. Eamonn replied the blanket is "warm" or "important" and seconds later, took the blanket off to get into a seated position on the couch. Eamonn then said, "Let me just get my shoes on," to which at least two officers respond, "fair enough" and "we can do that."

15.

However, as Eamonn bent down for his shoes from a seated position on the couch, officers—including Defendants Wright and Salsbury—forcefully grabbed him, dragged him down, and threw him onto another sofa, knocking over furniture on the way. While several officers held Eammon down on the sofa and restrained him, Defendant Potter punched Eamonn in the head at least three times. Defendant Wright also punched Eamonn in the face at least two times. Defendants' punches were forceful enough to split or cut Eamonn's head and splatter his blood on the sofa cushion.

16.

While officers restrained Eamonn, holding down his legs and arms, pressing down on his head, and covering his eyes, Defendant Salsbury yelled, "Taser guys. Taser, Taser, Taser." Defendant Wright then shot Eamonn with his Taser in his upper right chest, subjecting Eamonn to its electric current.

PAGE - 6   COMPLAINT



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

17.

The officers then dragged Eamonn from the sofa and put him face down on the living room table with his knees on the floor. At least one officer pointed a Taser at Eamonn's buttocks. Officers then handcuffed Eamonn and applied a leg restraint, hog-tying him.

18.

At no point did Eamonn pose any threat to the officers or engage in any active aggression during any of the interaction or during the officers' use of force.

19.

While Eamonn was on his knees, handcuffed, and hog-tied in the living room, Defendant Alvarez recited his *Miranda* rights and began interrogating Eamonn. Eamonn repeatedly asked for the handcuffs and leg restraints to be removed, which Defendants denied. During the interrogation, when Eamonn said "I need the leg things off," Defendant Alavarez responded, "Eamonn, I need a better understanding of what happened here before we can make any agreements about taking the things off your legs" in an attempt to coerce him into making a statement to the police.

20.

Although Eamonn repeatedly told Defendants that he would walk to the police car, they refused to remove his leg restraints or his handcuffs and instead carried him out of the house and shoved him into the back of the police car. Defendants put Eamonn into the back of the police car in handcuffs, leg restraints, and with his pants pulled down and underwear exposed. Eamonn asked again for the leg restraints to be taken off, but Defendants refused to remove them, despite the fact that Eamonn was and had been calm and compliant, and had notified them he would walk and did not need the restraints. Eamonn's medical doctor was present, as well as a counselor who knew Eamonn; they both pleaded with the police to take him to the hospital rather than to jail.  Their input was ignored, and the police took him to jail.  About half



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

an hour later, when Eamonn was at the Lane County jail, jail deputies finally removed the leg restraints and handcuffs before taking him in to be booked.

21.

Defendants decided Eamonn committed the crime of Menacing against Paul and/or Sarah. Defendants discussed on at least two separate incidents whether there should be "any other charges" such as "resisting" and that "the other officer might throw on the resisting" later.

22.

After Defendants beat, Tased, and arrested Eamonn, they then told Paul and Sarah that he was being arrested and transported to jail. Sarah, too, strongly advocated for her son to receive mental health treatment rather than be sent to jail, an experience which would only further harm him and their relationship. Defendants told Sarah their "hands were tied" because they were mandated to arrest Eamonn for a domestic violence crime. Defendants also re-interrogated Paul and Sarah. After Sarah or another advocate for Eamonn stated that they were going to file a complaint against the police, Defendants later disparagingly commented among one another that she "can complain all she wants."

23.

Despite having beaten Eamonn bloody and then Tasering him, at no point on August 6, 2020—despite multiple interactions with Sarah and Paul—did Defendants tell them that Eamonn had been punched in the head multiple times and Tasered. To the contrary, Defendants lied to Sarah and Paul and told them Eamonn "wasn't injured," "he's doing just fine," "he did not get injured," and that "he's fine and safe." When Sarah returned to her home, she found blood all over the sofa, a spent Taser prong in her living room, and the house in disarray.

24.

Defendants wrote their police reports in a manner exaggerating, misrepresenting, or mischaracterizing the incident.



25.

The charges against Eamonn were eventually dropped, but during the period of the pendency of the criminal charges, because the police wrote the police report naming Paul as the victim, Paul was prohibited from having contact with Eamonn, which further exacerbated Eamonn's suffering.

26.

As a result of Defendants' use of force, Eamonn suffered and continues to suffer physical harms and emotional distress. To this day, he still suffers panic, and humiliation when he recalls the incident, and it has impacted his relationship with his parents and his home. Prior to this incident, Eamonn composed music and poetry. Defendants robbed him of his confidence and peace, exacerbating his precarious mental health, and causing him lasting harm.

27.

Sarah made a formal complaint with the City of Eugene and the EPD, who reviewed the body camera footage and related police reports and determined that all use of force was appropriate and the situation was handled consistent with EPD policy, training, and practices. Upon information and belief, Chief of police approved and ratified this use of force. In addition, Eugene's civilian review board, although notably with a non-unanimous decision, agreed that the officers' actions were within EPD policy guidelines.

28.

Upon information and belief, Eugene Police Departments has a pattern and practice of allowing excessive force against people in mental health crisis and failing to accommodate their disabilities. In addition, this unacceptable use of force is part of Eugene Police Department's training and practices. Moreover, several officers on scene were trained in crisis negotiation.
/ / /



**FIRST CLAIM FOR RELIEF**
**(Fourth Amendment Violation – Excessive Force – 42 U.S.C. § 1983)**
**Count 1: Individual Liability Against Individual Defendants**

29.

Plaintiff realleges and incorporates by reference the above paragraphs.

30.

As described above, Defendants violated Plaintiff's right to be free from unreasonable force as guaranteed by the Fourth Amendment to the United States Constitution, which caused his resulting injuries. Defendants' use of force was objectively unreasonable under the circumstances, unjustifiable, and constituted unlawful seizure and excessive force.

31.

At all material times, the law was clearly established that Defendants' use of force, in the manner and under the circumstances used against Plaintiff, who was suffering a mental health crisis, nonviolent, and attempting to comply, was objectively unreasonable, and any reasonable law enforcement officer would have known that the force used against Plaintiff was unreasonable and violated his clearly established Fourth Amendment rights.

32.

Defendants' conduct caused Plaintiff bodily harm and emotional distress in an amount to be determined at trial.

33.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Count 2: Individual Supervisory Liability Against Individual Defendants Wright and Salisbury**

34.

Plaintiff realleges and incorporates by reference the above paragraphs.

/ / /



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

35.

At all material times, Defendants Salisbury, a lieutenant, and Wright, a sergeant, supervised their subordinates, the named individual defendants.

36.

As alleged above, Defendants Salisbury and Wright's acts of taking down and arresting Plaintiff, direction for Plaintiff to be Tasered, the failure to stop his subordinates from punching and Tasering Plaintiff while he was in a mental health crisis and/or nonviolent and/or restrained by officers deprived Plaintiff of his particular rights under the United States Constitution as explained above and below.  In addition, or in the alternative, Defendants Salisbury and Wright directed their subordinates' violative conduct and/or set in motion or refused to terminate his subordinates' violative conduct that he knew or should have known would result in the violation of Plaintiff's constitutional rights.

37.

Defendant Wright's conduct caused Plaintiff bodily harm and emotional distress in an amount to be determined at trial.

38.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 USC § 1988.

**SECOND CLAIM FOR RELIEF**
**(Fourth Amendment Violation – Excessive Force – 42 U.S.C § 1983)**
**Municipal Liability Against Defendant City of Eugene – Unlawful Practice or Allowing Excessive Force Against People in Mental Health Crisis**

39.

The City of Eugene has a policy, practice, or custom exhibiting deliberate indifference to the constitutional rights of people with mental health disabilities or experiencing mental health crisis.

40.

It was the policy and/or custom of EPD to inadequately supervise and train its officers, including defendant officers, thereby failing to adequately discourage further constitutional violations on

PAGE - 11   COMPLAINT



the part of its officers. EPD did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

41.

As described above and at least in part, one or more of EPD policies, well-established practices or acts caused the violation of Plaintiff's right not to be subjected to excessive physical force and his resulting injuries, as guaranteed by the Fourth Amendment.

42.

The City of Eugene reviewed the conduct at issue and ratified it at the highest levels of the police department.

43.

Defendant's conduct caused Plaintiff bodily harm and emotional distress in an amount to be determined at trial.

44.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
**(Disability Discrimination – Against Defendant City of Eugene)**

45.

Plaintiff realleges and incorporates by reference the above paragraphs.

46.

Plaintiff's mental health diagnosis is a disability within the meaning of the Americans with Disabilities Act and amendments (42 U.S.C. §§ 12131-12165 ("ADAA"), Section 504 of the 1973 Rehabilitation Act ("Rehab Act"), and OS 659A.142.

/ / /


/ / /

PAGE - 12   COMPLAINT



1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

47.

Defendant City of Eugene knew or should have known that Plaintiff was disabled for purposes of this claim. In being deployed to the scene and their actions thereafter, Eugene was providing services and/or programs to the public.

48.

The City of Eugene failed to accommodate Plaintiff's disability in violation of Title II of the ADAA and Section 504 of the Rehab Act.

49.

The City of Eugene discriminated against Plaintiff based on his disability in violation of the ADAA, the Rehab Act, and ORS 659A.142(3) and (4).

50.

Defendant's conduct caused Plaintiff bodily harm and emotional distress in an amount to be determined at trial.

51.

Plaintiff is entitled to reasonable attorney fees and costs pursuant to 42 USC § 1988.

**FOURTH CLAIM FOR RELIEF**
**(Battery – State Tort – Against Defendant City of Eugene)**

52.

Plaintiff realleges and incorporates by reference the above paragraphs.

53.

Employees and agents of the Defendant City of Eugene did unlawfully intend to cause harmful physical contact with Plaintiff and did cause harmful physical contact by the individual Defendants' intentional act of punching Plaintiff multiple times and then Tasering him. Such actions were unreasonable and excessive under the circumstances and were not otherwise privileged or justified.



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

54.

Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

55.

Plaintiff is entitled to his attorneys' fees and costs pursuant to ORS 20.107.

## FIFTH CLAIM FOR RELIEF
### (Abuse of Vulnerable Person Under ORS 124.100(2)– Against Defendant City of Eugene)

56.

Plaintiff realleges and incorporates by reference the above paragraphs.

57.

Plaintiff was at all material times a vulnerable person within the meaning of ORS 124.100 in that he was a person with a disability susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury because of his physical and/or mental impairment.

58.

As described above, Defendant City of Eugene, by and through its employees and agents, caused or permitted the acts of physical abuse upon Plaintiff, a vulnerable person.

59.

As a result of The City of Eugene's conduct, Plaintiff will suffer and continues to suffer, and likely will suffer in the future from a sense of personal violation, confusion, a sense of betrayal, lack of trust in others and law enforcement, fear and anxiety, and a heightened sense of vulnerability, among other things, all to his non-economic damages in an amount to be determined at trial.

60.

Under ORS 124.100, Plaintiff is entitled to his statutory damages and reasonable attorney fees and costs of litigation, including his expert witness fees.



**SIXTH CLAIM FOR RELIEF**
(Negligence – State Tort – Against Defendant City of Eugene)

61.

Plaintiff realleges and incorporates by reference the above paragraphs.

62.

The above-described actions of the Individual Defendants created a duty of care to Plaintiff. The above-described actions of the Defendants breached that duty of care.

63.

Defendants' above-described individual or cumulative acts were unreasonable and excessively dangerous in light of the risk to Plaintiff and in light of the purported purposes of the acts.

64.

In performing the above-described individual and cumulative acts, Defendant City's officers directly and proximately caused Plaintiff physical and/or mental harm while infringing on Plaintiff's rights to be free from unlawful violence.

65.

The City's inadequate training, supervision, review, or discipline of EPD officers has created a culture and pattern within EPD of officers using excessive force against people in mental health crises and/or people who are nonviolent. Agents of the City created an unreasonable risk of harm against Plaintiff and all those present.

66.

Plaintiff's physical and mental harms and injuries were within the general type of potential incidents and injuries that made Defendants' conduct negligent. That is, the acts of Defendant City's officers in punching Plaintiff, aiming at and shooting Plaintiff with a Taser, as described above, created a foreseeable and unreasonable risk of physical and mental harm that reasonably would likely result in infringements of Plaintiff's rights to be free from unreasonable force by the government.

PAGE - 15   COMPLAINT



67.

Defendant City is vicariously and directly liable to Plaintiff for the conduct of the individual Defendants and law enforcement agents alleged herein.

68.

In performing the above-described acts, Defendants directly and proximately caused Plaintiff to suffer physical and mental harms and economic and non-economic damages. Defendant's intentional conduct directly and proximately caused Plaintiff to suffer bodily harm and emotional distress in an amount to be determined at trial.

69.

Pursuant to ORS 20.107, Plaintiff is entitled to recover reasonable attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1. Economic damages,

2. Non-Economic damages,

3. Treble damages under ORS 124.100,

4. Attorney's fees,

2. Prejudgment and post judgement interest as appropriate and allowed by law,

3. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the applicable time frame; and

4. Any other relief the court deems proper.

**DATED** this 5th day of August 2022.

    s/ *J. Ashlee Albies*
**J. Ashlee Albies,** OSB No. 051846
**Maya Rinta,** OSB No. 195058
**David J. Linthorst,** OSB 116975
*Attorneys for Plaintiff*

PAGE - 16   COMPLAINT



ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292